IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 27, 2018 Session

## STATE OF TENNESSEE v. WESLEY LYNN HATMAKER

**Appeal from the Circuit Court for Campbell County**
**No. 17253     Paul G. Summers, Judge**

_____

**No. E2017-01370-CCA-R3-CD**

_____

Wesley Lynn Hatmaker ("the Defendant") pled guilty to two counts of theft of property valued between $10,000 and $60,000 (Counts 1 and 6) and four counts of theft of property valued between $60,000 and $250,000 (Counts 2, 3, 4, and 5).  The trial court imposed concurrent sentences of three years and six months for Counts 1 and 6, and concurrent sentences of ten years and six months for Counts 2, 3, 4, and 5, with Counts 1 and 2 to be served consecutively and all others concurrently, for an effective sentence of fourteen years in the Department of Correction with a release eligibility of thirty percent. The Defendant asserts that the trial court improperly applied sentencing factors, improperly imposed consecutive sentences, and improperly denied alternative sentencing. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. ROSS DYER, JJ., joined.

Stephen Ross Johnson and Tyler M. Caviness, Knoxville, Tennessee, for the appellant, Wesley Lynn Hatmaker.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Jared R. Effler, District Attorney General; and Thomas E. Barclay and Courtney Stanifer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## I. Factual and Procedural History

On May 11, 2017, the Defendant pled guilty to two counts of theft of property valued between $10,000 and $60,000, and four counts of theft of property valued between $60,000 and $250,000. As a part of the open plea, the State dismissed Count 7 of the indictment and the trial court determined the length and manner of service of the sentence.

At the guilty plea hearing, the Defendant stipulated to the State's recitation of the following facts:

> As to Count 1[,] . . . [o]n April 8, 2009[,] proceeds from the sale of real property sold in the Lois M. Faile estate were transferred to [the Defendant] with a check in the amount of $20,731.82 payable to the "Estate of Lois Faile—[the Defendant], Atty." The estate was never settled and the monies were never paid out. [The Defendant] took the money for his personal use. . . . [The Defendant] concealed the crime from the date of the commission of the offense until December 2015, by deception and misrepresentation in that he repeatedly lied to Kelly Ray, a representative of the estate, by telling her information about the status of a Chancery Court case that he knew to be false, and thereby prevented the representative of the estate from discovering the offense, and therefore tolled the [s]tatute of [l]imitations pursuant to [Tennessee Code Annotated section] 40-2-103.

> As to Count 2[,] . . . [o]n October 10, 2009, [the Defendant] was given a check for $163,000 to settle the Estate of Ray Odom Baker. He took the money for his personal use. He repaid the money more than two years later by depositing $163,000 with the clerk of the court on December 12, 2011. The money should have been paid by the estate to the State of Tennessee Bureau of TennCare to release a lien against the estate.

> As to Count 3[,] . . . Melissa Ann Albright died February 13, 2014. A check from Allstate [Insurance] was payable to Melissa Ann Albright in the amount of $30,000. Mary Jane Partin, the decedent's mother and heir to her daughter's estate, took the check to [the Defendant] and asked him to handle the estate. He took the check and agreed to handle the estate. In June 2014, Mary Jane Partin received another check for Melissa Ann Albright in the amount of $72,361.77. Mary Jane Partin took the check to

- 2 -

[the Defendant] and told him she desired to use her inheritance from the estate to establish a trust for her granddaughter and the decedent's niece, Shelby Jane Davis. [The Defendant] deposited both checks in his trust account and used the money for his personal use.

As to Count 4[,] . . . [i]n February 2015[, the Defendant] was appointed Administrator ad [l]item for the estate of William Blankenship. On March 18, 2015, he received a check from the law firm of Arnett, Draper, and Haygood to settle an insurance claim. The check was made out to "Estate of William Wadsworth Blankenship, [the Defendant,] Administrator" in the amount of $89,438.22. He deposited the check in his trust account and used the money for his personal use. In November 2015[,] he wrote checks from his trust account to heirs of the estate totaling $30,000, but the remaining money was never paid out.

As to Count 5[,] . . . [the Defendant] was hired to close the estate of Mac Arthur Coffey and establish a trust for the benefit of Sidney Coffey. On April 23, 2014, [the Defendant] met with Jenny Ann Daniel and removed $63,363 in cash from a safe deposit box. He took the money and made a deposit to his trust account. On October 29, 2014, Jenny Ann Daniel met with [the Defendant] at Peoples Bank of the South. They closed a checking account belonging to Mac Arthur Coffey[,] and a check was written payable to the Estate of Mac Arthur Coffey for $13,652.77. Jenny Ann Daniel endorsed the check and turned it over to [the Defendant]. He deposited the check into his personal checking account the same day. Between August 2014 and October 2015, [the Defendant] paid out $6,702 to Sidney Coffey and made $1,863.70 in various payments regarding the Estate of Mac Arthur Coffey. [The Defendant] used the remainder of the money for his personal use.

As to Count 6[,] . . . Jeff Anderson hired [the Defendant] to represent him in a pending criminal case involving Jeff Anderson's wife, Amy Anderson. Jeff Anderson had a separate but related domestic case also involving Amy Anderson in which Jeff Anderson was represented by different counsel. On November 17, 2015, Jeff Anderson got a cashier's check from his bank in the amount of $40,000 and gave the check to his criminal defense counsel, [the Defendant]. The same day, [the Defendant] deposited $30,000 to his trust account and $10,000 to his personal account. The money was never paid to Jeff Anderson or Amy Anderson. About a week later, [the Defendant] wrote checks from his trust account totaling $30,000 to make a partial repayment to the victims in the Estate of William

- 3 -

Blankenship as described in [Count] four (4) above.

At all times described herein, [the Defendant] was an attorney licensed to practice law in the State of Tennessee, that he was acting in that capacity when he received money from and/or on behalf of his clients who are the victims identified in [C]ounts 1 through 6 of the [i]ndictment.

[The Defendant] admitted his unlawful conduct before the Board of Professional Responsibility, and he has been disbarred as of October 3, 2016, by Order of the Tennessee Supreme Court.

The offenses described in [C]ounts 1 through 6 above were committed in Campbell County, Tennessee.

The State did not file notice of any enhancement factors prior to the June 27, 2017 sentencing hearing. However, at the sentencing hearing, several victims provided impact statements. The State read into the record a letter from Kelly Ray, a representative of the Estate of Lois Faile. Ms. Ray stated she was humiliated and embarrassed and that the Defendant "preyed on the weak." She stated, "Unfortunately, I cannot change the past, but the [c]ourt can rectify the past by issuing a sentence that involves prison time."

Next, the trial court noted that Jack and Inez Bridges were present for the hearing on behalf of the Estate of Odom Ray Baker. Both Mr. and Ms. Bridges declined to make a statement. The State told the court that the Defendant's theft from the Baker estate totaled $163,000 but that he did pay the money back to the estate two years later.

Tammy Albright spoke on behalf of the Estate of Melissa Ann Albright, her sister. Ms. Tammy Albright[1] stated that her sister passed away from cancer and planned to leave her life savings of $102,361.77 to Ms. Tammy Albright's daughter, who was Ms. Melissa Ann Albright's niece. Ms. Tammy Albright testified that her mother had a nervous breakdown because she blamed herself for losing her sister's life savings to the Defendant. She stated that her daughter had planned to use the money to further her education. Ms. Tammy Albright had no sentencing recommendations to the court, saying, "I feel like no matter what you do to [the Defendant], he's never gonna [sic] feel sorry for anybody but himself."

The State called Carl Blankenship to speak on behalf of the Estate of William Blankenship. Mr. Blankenship stated that he lost his parents and their home because the

---

[1] We will use the first names of Ms. Tammy Albright and Ms. Melissa Ann Albright for clarity. We intend no disrespect.

- 4 -

Defendant "stole [his] money" and then "tried to charge [him] $5,000 for robbing [him]." He testified that his sister has five children and could have used the money "more than anybody." The State told the trial court that the gross amount the Defendant stole from the Blankenship estate was almost $90,000. Mr. Blankenship asked the court to send the Defendant to prison.

Steve Hurst gave a statement to the trial court as the attorney for Sidney Coffey. When Ms. Coffey's grandparents passed away, Ms. Coffey's aunt mishandled their estate. Mr. Hurst helped Ms. Coffey by taking over her financial affairs, and he arranged with her grandparents' estate to pay funds to Ms. Coffey on a periodic basis to help her with her education. It was then that Mr. Hurst discovered that the Defendant had been stealing from the estate. The State told the trial court that the gross amount the Defendant stole from the Coffey estate was over $77,000. Mr. Hurst asked the trial court to give the Defendant probation so that he could continue to repay Ms. Coffey because "she needs the money more than she needs . . . retribution."

Jeff Anderson was not present for the hearing, but the State informed the trial court that the gross amount the Defendant stole from Mr. Anderson was approximately $40,000.

The State called Chancellor Elizabeth Asbury, the chancery court judge who presided over the Blankenship estate. When Chancellor Asbury received the TennCare releases from the Blankenship estate in October 2015, she instructed the Defendant to pay the money into the Registry of the Court within two business days. When the deadline came, the Defendant confessed to Chancellor Asbury that he did not have the money.

The Defendant made an unsworn allocution statement requesting probation so that he could continue to make restitution to his victims and to care for his family.

The trial court found that the Defendant was a Range I, standard offender with several applicable enhancement factors. First, the trial court found that the Defendant had a history of criminal behavior spanning several years, beginning in April 2009. The trial court applied this factor to Counts 2 through 6. The trial court said the Defendant "relentlessly stole large amounts of money from at least six clients . . . for his own personal use and benefit . . . and sought to hide his criminal activities until he could no longer maintain the illusion of his integrity." The trial court placed a significant amount of weight on this factor.

Next, the trial court found that the offenses involved more than one victim because there were "additional victims beyond those named in the indictment [that] were affected by the actions of the [D]efendant" in the Counts involving estate clients. The trial court

placed a significant amount of weight on this factor.  The trial court found that, in Counts 2 and 5, a victim of the Defendant's offenses was particularly vulnerable because of age or disability.  The trial court placed "some but not a tremendous amount of weight on this factor."

Finally, the trial court found that the Defendant "abused a position of public or private trust as a lawyer" and "utilized his professional license to facilitate his offenses." The trial court placed "great weight on this factor as to all [C]ounts[.]"

When considering mitigating factors, the trial court found that the Defendant's actions "neither caused nor threatened serious bodily injury" but placed little weight on this factor "because theft usually doesn't involve any injury."  The trial court also found the Defendant's payment of $50,000 to the Campbell County Criminal Court Clerk to be distributed to his victims to be a mitigating factor.

The trial court considered several factors regarding the imposition of consecutive sentences.  First, the trial court found the Defendant to be a professional criminal because "$500,000 is a lot of money for a country lawyer and amounts to a 'major source of livelihood' for at least six years."  Next, the court found that the Defendant's record of criminal activity was "extensive" because of his "lies to his clients, theft of money entrusted to him[,] and repeated criminal activity [over] an extended period of time[.]" Because of these two factors, the trial court imposed consecutive sentences for Counts 1 and 2, with all others to run concurrently.

The trial court stated that it considered the following factors regarding alternative sentencing :

> the presentence report, the [D]efendant's physical, mental condition and social history, the facts and circumstances surrounding the offenses, and the nature and circumstances of the criminal conduct, prior criminal history of the [D]efendant or lack thereof, the previous actions and character of the [D]efendant, whether or not the [D]efendant might reasonably be expected to be rehabilitated, whether or not it reasonably appears the [D]efendant will abide by the terms of probation, whether or not the interests of society being protected from further future criminal conduct are great, and whether or not measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the [D]efendant, whether or not a sentence of full probation would unduly depreciate, or any probation would unduly depreciate the seriousness of the offenses, deterrence, and whether or not the offenses were particularly enormous, gross or heinous.

The trial court found that alternative sentencing was not appropriate and denied probation. The trial court sentenced the Defendant to three years and six months for Counts 1 and 6, and ten years and six months for Counts 2, 3, 4, and 5, with Counts 1 and 2 to be served consecutively to each other and all others concurrently, for an effective sentence of fourteen years with a release eligibility of thirty percent.

In the trial court's written sentencing order, it summarized its findings at the sentencing hearing and found an additional enhancement factor. The trial court concluded that the damages inflicted upon the victims were particularly great because "[t]he amount of money stolen from the victims in several counts is a significant multiple of the amount required to establish the offense." The trial court placed moderate weight on this factor.

The Defendant now timely appeals.

## II. Analysis

On appeal, the Defendant argues that (1) the trial court erred as a matter of law in determining the applicability of certain sentencing factors, (2) the trial court erred as a matter of law by imposing consecutive sentences, (3) the trial court erred as a matter of law by rejecting alternative sentencing, and (4) the trial court "wholly departed" from the purposes and principles of sentencing. The Defendant requests that this court reverse the trial court's sentence and impose alternative sentencing. We will examine each of these arguments in turn.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2017), Sentencing Comm'n Cmts.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code

Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made on the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210(b)(1) (2017); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103(5) (2017).

Theft of property valued between $60,000 and $250,000 is a Class B Felony. Tenn. Code Ann. §§ 39-14-103 (2009); 39-14-103(a) (2014); 39-14-103(a) (2015); 39-14-105(5) (2009); 39-14-105(a)(5) (2014); 39-14-105(a)(5) (2015). The Range I sentence range for a Class B felony is "not less than eight (8) nor more than twelve (12) years[.]" Tenn. Code Ann. § 40-35-112(a)(2) (2017). Theft of property valued between $10,000 and $60,000 is a Class C felony. Tenn. Code Ann. §§ 39-14-103 (2009); 39-14-103(a) (2015); 39-14-105(4) (2009); 39-14-105(a)(4) (2015). The Range I sentence range for a Class C felony is "not less than three (3) nor more than six (6) years[.]" Tenn. Code Ann. § 40-35-112(a)(3) (2017).

*A. Sentence Length*

The Defendant contends that the trial court (1) improperly allowed the State to raise enhancement factors after the presentence report was filed and (2) improperly applied sentencing factors. The State argues that (1) the State's notice of enhancement factors was timely and (2) the trial court acted within its discretion in applying sentencing factors. We will review these issues in turn.

1. Notice of Intent to Seek Enhancement Factors

"In all cases following a finding of guilt, the court *may* require that . . . the district attorney general file a statement with the court setting forth any enhancement or mitigating factors the district attorney general believes should be considered by the court[.]" Tenn. Code Ann. § 40-35-202(b)(1) (2017) (emphasis added). "There is, of course, no statutory mandate for the state to provide notice of enhancement factors." *State v. Bobby Joe Strader*, No. 03C01-9812-CR-00425, 1999 WL 1023738, at *3 (Tenn. Crim. App. Nov. 10, 1999) (citing *State v. Adams,* 788 S.W.2d 557 (Tenn. 1990)), *no perm. app. filed*. "[A] trial judge may consider enhancement factors notwithstanding the fact the district attorney general does not file a notice of enhancement factors" because Tennessee Code Annotated section 40-35-202(b)(1) is "permissive." *State v. Birge*, 792 S.W.2d 723, 726 (Tenn. Crim. App. 1990); *see also* Tenn. Code Ann. § 40-35-202(b)(1) (2017). Therefore a trial court may consider enhancement factors for a standard

offender's in-range sentence regardless of whether or when the factors are proffered by the State.

Here, the State, through its Sentencing Memorandum, sought four enhancement factors which were found by the probation officer in preparing the Defendant's presentence report. The State is only statutorily required to provide notice of enhancement factors "if, and on what basis, it seeks other than a *standard* sentence[.]" *State v. Adams*, 788 S.W.2d 557, 558 (Tenn. 1990) (emphasis added); *see also* Tenn. Code Ann. § 40-35-202(a) (2017). In this case, the State did not request that the trial court find that the Defendant was a multiple, persistent, or career offender and thus had no statutory requirement to provide notice of enhancement factors. Further, there is no evidence that the trial court ordered the State to give notice of its intent to seek enhancement factors. Three of the State's proffered enhancement factors detailed in its June 19, 2017 Sentencing Memorandum's applied to the Defendant's in-range sentence as a standard offender, regardless of prior notice. *Birge*, 792 S.W.2d at 726. Notwithstanding that the State was not required to provide notice, the Defendant had eight days of actual notice between the filing of the State's Sentencing Memorandum and the sentencing hearing. Further, the Defendant filed a June 26, 2017 Response to the State's Sentencing Memorandum. Thus, the trial court did not err in considering these enhancement factors.

### 2. Sentencing Factors

The Defendant asserts that the trial court abused its discretion by applying the four enhancement factors proffered in the State's June 19, 2017 Sentencing Memorandum, and further erred by applying one enhancement factor *sua sponte*. The State argues that the trial court acted within its discretion in applying five enhancement factors. The Defendant further claims that the trial court abused its discretion by finding that ten mitigating factors found in the presentence report did not apply to the Defendant's case. The State argues that the trial court acted within its discretion when it considered all the mitigating factors in the presentence report and then rejected all but two.

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2017); *Bise*, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2017), Sentencing Comm'n Cmts. "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing determination." *Bise*, 380 S.W.3d at 709.

Moreover, under those circumstances, this court may not disturb the sentence even if it had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).

### a. Application of enhancement factors

In his appellate brief, the Defendant concedes that the enhancement factor that he abused his professional license applies to all counts. The finding of this one enhancement factor alone supports the trial court's decision. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Id*. Even "a maximum sentence within the appropriate range, in the total absence of any applicable enhancement factors, and even with the existence of applicable mitigating factors, should be upheld as long as there are reasons consistent with the statutory purposes and principles of sentencing." *State v. Christopher Scott Chapman*, No. M2011-01670-CCA-R3-CD, 2013 WL 1035726, at *9 (Tenn. Crim. App. Mar. 13, 2013) (citing *Bise*, 380 S.W.3d at 706; *Carter*, 254 S.W.3d at 345-46), *no perm. app. filed*.

A trial court can consider certain enhancement factors in sentencing which would increase a defendant's sentence from the statutory minimum:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

. . . .

(3) The offense involved more than one (1) victim;

(4) A victim of the offense was particularly vulnerable because of age or physical or mental disability;

. . . .

(6) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great; [and]

. . . .

(14) The defendant abused a position of public or private trust, or used a professional license in a manner that significantly facilitated the commission or the fulfillment of the offense[.]

Tenn. Code Ann. § 40-35-114(1), (3), (4), (6), (14) (2017).

At the sentencing hearing, the trial court stated its reasons on the record for the application of the enhancement factors. First, the court found that the Defendant "[had] a previous history of . . . criminal behavior" because the criminal activity in the instant case involved six thefts spanning six years. *See* Tenn. Code Ann. § 40-35-114(1) (2017). "The date of the offense, not the date of the conviction, determines whether offenses can be used to enhance punishment." *State v. McKnight*, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994), *abrogated on other grounds by State v. Williams*, 977 S.W.2d 101 (Tenn. 1998) *as recognized by State v. Collier*, 411 S.W.3d 886 (Tenn. 2013). The Defendant concedes that case law supports a finding of criminal history even in the absence of criminal convictions but argues the weight the trial court should afford such criminal history is "unclear." "[T]he 2005 amendments [to the 1989 Sentencing Act] deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *Carter*, 254 S.W.3d at 344. The record here shows six separate thefts spanning six years, totaling nearly $500,000, indicating significant criminal history. Therefore, the trial court did not abuse its discretion either in finding the criminal history enhancement factor applies to Counts 2 through 6 or in giving this factor "significant weight."

The Defendant further argues that the trial court erred by finding the "extensive criminal history" enhancement factor *sua sponte*. A trial court may properly raise enhancement factors on its own. "[T]he trial court is not bound by the [S]tate's recommendations or limited to only those factors presented by the State." *State v. Tawana Jones*, No. W2013-00335-CCA-R3-CD, 2014 WL 3002808, at *17 (Tenn. Crim. App. Jan. 29, 2014) (citing *State v. Albert Franklin,* No. 02C-01-9404-CR-00081, 1994 WL 697928, at *1 (Tenn. Crim. App. Dec.14, 1994), *no perm. app. filed*), *perm. app. denied* (Tenn. Jan 29, 2014). Here, the trial court found that "the [D]efendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." The trial court was not "bound by the [S]tate's recommendations," *see id.*, and was therefore free to find this factor *sua sponte*.

Next, the trial court found that Counts 1 through 5 each involved more than one victim because "the victims [in Counts 1 through 5] were estate clients which affect[ed] beneficiaries, creditors[,] and family." *See* Tenn. Code Ann. § 40-35-114(3) (2017). The Defendant argues that an estate's beneficiaries and creditors cannot be considered additional "victims" because "there cannot be multiple victims for any one offense where the indictment specifies a named victim[,]" and the named victims in the indictments were estates. The State argues that the trial court properly exercised its authority in finding this factor. We agree with the State.

A "victim" is "a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." *State v. Raines*, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). In this case, the individual beneficiaries and creditors of the affected estates "had property stolen" from them and are therefore considered "victims" within the meaning of Tennessee Code Annotated section 40-35-114(3). Further, this court has found that the beneficiaries and creditors of an estate may be considered "victims" for the purposes of applying the enhancement factor for multiple victims. *See State v. John Parker*, No. W2007-02702-CCA-R3-CD, 2010 WL 432416, at *5-6 (Tenn. Crim. App. Feb. 5, 2010) (holding that the trial court properly found the enhancement factor for multiple victims when a defendant pled guilty to theft from an estate which directly affected the creators and beneficiaries of that estate), *perm. app. denied* (Tenn. Aug. 25, 2010). Thus, the trial court did not abuse its discretion in finding that the "multiple victims" enhancement factor applied to Counts 1 through 5.

Next, the Defendant argues that the trial court erred by finding the amount of damage to the victims "in several counts" was "particularly great." *See* Tenn. Code Ann. § 40-35-114(6) (2017). The Defendant argues that *State v. Grissom* rejects the application of enhancement factor six to cases of theft. 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997). He further contends that, because the Legislature added an additional upper range for theft in 2012,[2] "if the Legislature had intended to punish a defendant who stole between $60,000 and $249,000 more harshly, it would have done so by statute." *See* Tenn. Code Ann. § 39-14-105(a)(6) (2012). The State argues the trial court's application of enhancement factor six falls under an exception to the general rule in *Grissom* rejecting the application of this enhancement factor to cases of theft. We agree with the State.

In theft cases, this court has sometimes rejected the use of the "particularly great damage" enhancement factor. Because "the punishment for theft is enhanced based upon the amount taken by the accused, use of this enhancement factor constitutes double enhancement in violation of the statute." *Grissom*, 956 S.W.2d at 518 (citing *State v. Brewer*, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993)). However, this court has upheld exceptions to the *Grissom* rule when the "particularly great damage" factor has been applied to theft cases in two main ways: (1) theft of multiples of the highest grade of theft, or (2) theft approaching the threshold amount of the next highest grade of theft. *See State v. Jamie H. Jones*, No. M2002-00055-CCA-R3-CD, 2003 WL 21281650, at *21 (Tenn. Crim. App. June 4, 2003) (upholding application of the "particularly great damage" factor "when the amount taken approaches the upper end of the offense

---

[2] In 2012, the Legislature amended Tennessee Code Annotated section 39-14-105(a)(6) to include a class A felony for theft of property valued at $250,000 or above. *See* 2012 Tenn. Laws Pub. Ch. 1080 (S.B. 2606) § (1)(a)(6).

spectrum or the amount taken is as much as six times the amount of the minimum of the offense"), *no perm. app. filed*; *see also State v. Chanda Dawn Langston*, No. M2009-02247-CCA-R3-CD, 2010 WL 3822829, at \*5 (Tenn. Crim. App. Sept. 30, 2010) (upholding use of the "particularly great damage" factor for a theft of $106,000, almost twice the minimum amount necessary for highest grade of theft at the time of the offense), *no perm. app. filed*.  For example, in 2013, the defendant in *State v. Brenda Judy Moss* was convicted of a Class B felony for stealing $111,374.19, a theft which occurred in 2011.  No. M2013-01377-CCA-R3-CD, 2014 WL 4243255, at \*2 (Tenn. Crim. App. Aug. 27, 2014), *perm. app. denied* (Tenn. Jan. 27, 2015).  Her theft was prior to the 2012 theft statute amendment, and she was sentenced in 2013.  *Id*. at \*2-3.  However, this court upheld the trial court's application of enhancement factor six for her 2011 theft, in spite of the 2012 theft statute amendment adding a Class A range above her theft amount.  *Id*. at \*6.  In the present case, Count 2 shows a theft of almost three times the minimum amount necessary for the highest grade of theft at the time of the offense.[3]  Therefore, the application to Count 2 of enhancement factor six, which the trial court gave little weight, was proper.

Finally, the trial court also found that the victims in Counts 2 and 5 were "particularly vulnerable" due to age.  *See* Tenn. Code Ann. § 40-35-114(4) (2017).  A victim is "particularly vulnerable due to age" where "the facts show that the vulnerabilities of the victim . . . had some bearing on, or some logical connection to, 'an inability to resist the crime, summon help, or testify at a later date.'"  *State v. Lewis*, 44 S.W.3d 501, 505 (Tenn. 2001) (quoting *State v. Poole,* 945 S.W.2d 93, 96 (Tenn. 1997)).  We agree with the Defendant and the State that there is nothing in the record indicating that the victims in Count 2 were "particularly vulnerable."  The State argues that the victim in Count 5 (Ms. Coffey) was a minor at the time of the offenses, was "unable to resist" the Defendant's offense, and was therefore "particularly vulnerable."  However, there is no evidence in the record that Ms. Coffey's age was relevant to the crime in question, that the Defendant selected her due to her age, or that the offense would have been different had she been older.  *See State v. Seals,* 735 S.W.2d 849, 853-4 (Tenn. Crim. App. 1987) (concluding that the "particularly vulnerable" factor was not applicable because the crime involved theft from mailboxes and the result would be the same regardless of the victims' ages).  Therefore, the trial court's application of this enhancement factor to Counts 2 and 5 was improper.  However, although the trial court improperly considered some of the victims' ages as an enhancement factor, we find that four other enhancement factors apply in this case.  "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness

---

[3] At the time of the offense of Count 2 in 2009, the highest grade of offense was a Class B felony for theft of property valued at $60,000 or more.  Tenn. Code Ann. §39-14-105(a)(5) (2009).  Count 2 was for theft of property valued at $163,000.

from its sentencing determination." *Bise*, 380 S.W.3d at 709. Thus, the trial court's sentencing determination remains within the presumption of reasonableness.

### b. Application of Mitigating Factors

The Defendant argues that the trial court failed to properly consider the mitigating factors in the presentence report. The Defendant further argues that the trial court failed to place on the record its reasoning for rejecting ten mitigating factors listed in the presentence report. The State argues that the trial court did not abuse its discretion in rejecting all but two mitigating factors.

Tennessee Code Annotated section 40-35-113 states, in pertinent part:

If appropriate for the offense, mitigating factors may include, but are not limited to:

(1) The defendant's criminal conduct neither caused nor threatened serious bodily injury;

. . . .

(5) Before detection, the defendant compensated or made a good faith attempt to compensate the victim of criminal conduct for the damage or injury the victim sustained;

. . . .

(11) The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct; [and]

. . . .

(13) Any other factor consistent with the purposes of this chapter.

Tenn. Code Ann. § 40-35-113(1), (5), (11), (13) (2017).

At the sentencing hearing, the trial court evaluated several mitigating factors:

The [c]ourt has evaluated each potential mitigating factor as outlined in Tennessee Code Annotated [section] 40-35-113, and any other factors

- 14 -

not listed in the statute that [d]efense counsel has pointed out. The [c]ourt finds that factor one, the [D]efendant's criminal conduct neither caused nor threatened serious bodily injury[,] applies. The [c]ourt places little weight on this factor, however, because theft usually doesn't involve any injury. But, nonetheless, it does meet the words of that particular mitigating factor. The [c]ourt puts little weight on that. The [D]efendant argues that his payment of $163,000 to the clerk on December the 12th, 2011, is an example of his having fully compensated one of the victims of his criminal conduct and that this [c]ourt should consider this a mitigating factor. This [c]ourt does not find this to be a mitigating factor, but rather an act to prevent detection of criminal activity. The [c]ourt does find that the payment of $50,000 to the Campbell County Criminal Court Clerk prior to his change of plea hearing is a mitigating factor.

[The Defendant] has agreed to make admissions necessary to facilitate the prompt payment of restitution to the victims from the Tennessee Lawyers' Fund for Client Assistance, and he claims this is the basis to apply a mitigating factor. The [c]ourt declines to so find. The Tennessee Lawyers' Fund for Client Assistance merely spreads the costs of the [D]efendant's defalcation to other innocent bystanders such as every lawyer in the State of Tennessee. This [c]ourt finds that allowing and encouraging others to pay for the [D]efendant's criminal activity is not redemptive behavior warranting mitigating consideration.

The [c]ourt finds [that] no other mitigating factors apply.

The Defendant specifically argues that nine mitigating factors should apply under the "catch-all" provision of Tennessee Code Annotated section 40-35-113(13), providing for application of "[a]ny other factor consistent with the purposes of this chapter." Tenn. Code Ann. § 40-35-113(13) (2017). He further argues that mitigating factor eleven applies because he committed the offense "under such unusual circumstances that it is unlikely a sustained intent to violate the law motivated the criminal conduct[.]" Tenn. Code Ann. § 40-35-113(11) (2017).

Like enhancement factors, mitigating factors are merely advisory. Tenn. Code Ann. § 40-35-210(c)(2) (2017); *see also Bise* 380 S.W. 3d at 707. Moreover, the trial court reasonably rejected mitigating factor eleven because the Defendant spent six years stealing from clients, which indicates sustained criminal intent. Although some factors proffered by the Defendant "could have been considered as . . . mitigating factor[s] under the 'catch-all' provision, we note that the Sentencing Act renders enhancing and mitigating factors merely 'advisory' pursuant to the 2005 amendments." *State v. Lucian*

*Alan Green*, No. M2014-00242-CCA-R3-CD, 2014 WL 6758838, at *9 (Tenn. Crim. App. Dec. 2, 2014), *perm. app. denied* (Tenn. Feb. 12, 2015). Further, the trial court stated on the record that it "evaluated each potential mitigating factor as outlined in Tennessee Code Annotated [section] 40-35-113, and any other factors not listed in the statute that [d]efense counsel ha[d] pointed out." While the trial court did not detail on the record specific reasons for rejecting each of these mitigating factors, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. Therefore, the trial court did not abuse its discretion in rejecting all but two mitigating factors.

The court's application of only two advisory mitigating factors falls within the presumption of reasonableness. As previously noted, even "a maximum sentence within the appropriate range, in the total absence of any applicable enhancement factors, and even with the existence of applicable mitigating factors, should be upheld as long as there are reasons consistent with the statutory purposes and principles of sentencing." *Christopher Scott Chapman*, 2013 WL 1035726, at *9. Therefore, the Defendant is not entitled to relief.

### B. Consecutive Sentencing

The Defendant argues that the trial court erred when it found the Defendant to be a "professional criminal" subject to consecutive sentencing. *See* Tenn. Code Ann. § 40-35-115(b)(1) (2017). The Defendant also contends that the trial court erred when it found the Defendant to have an extensive criminal record. *See* Tenn. Code Ann. § 40-35-115(b)(2) (2017). The State asserts that the trial court properly found by a preponderance of the evidence that the Defendant was a "professional criminal" who had an "extensive criminal history," which warranted consecutive sentences. We agree with the State.

In *State v. Pollard*, the Tennessee Supreme Court expanded its holding in *Bise* to trial courts' decisions regarding consecutive sentencing. 432 S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862 (citing Tenn. R. Crim. P. 32(c)(1); *Bise*, 380 S.W.3d at 705). Tennessee Code Annotated section 40-35-115(b) states, in pertinent part:

> The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

(1) [t]he defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood; [or]

(2) [t]he defendant is an offender whose record of criminal activity is extensive[.]"

Tenn. Code Ann. § 40-35-115(b)(1), (2) (2017). Any one ground set out in the above statute is "a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)).

Our supreme court has defined a "professional criminal" as "one who has knowingly devoted himself to criminal acts as a major source of livelihood or who has substantial income or resources not shown to be derived from a source other than criminal activity[.]" *Gray v. State*, 538 S.W.2d 391, 393 (Tenn. 1976). In *State v. Clifford Leon Farra*, this court noted that "the appellate courts have typically considered the offender's age, criminal history, and constancy of regular employment" in reviewing the application of the professional criminal factor to a determination of consecutive sentencing. No. E2001-02235-CCA-R3-CD, 2003 WL 22908104, at *14 (Tenn. Crim. App. Dec. 10, 2003) (internal citation omitted), *perm. app. denied* (Tenn. May 10, 2004). This court has previously held that "[w]hile the amount of income derived from illegal acts may be significant, it is not determinative. Only a 'major source of livelihood or . . . a substantial income or resources not shown to be derived from . . . other than criminal activity' is required" to establish the need for consecutive sentencing under the "professional criminal" ground. *State v. Roscoe C. Smith*, No. 01C01-9502-CR-00031, 1995 WL 599012, at *4 (Tenn. Crim. App. Oct. 12, 1995) (alterations in original) (quoting *Gray*, 538 S.W.2d at 393).

The State argues that only "*a* major source of livelihood," as opposed to "*the* major source of livelihood," is needed to implicate the "professional criminal" factor. "[I]t remains true that factor (1) is implicated when the defendant's criminal acts provide a major source of livelihood and not just when criminal activity provides the only, or even the major, source of livelihood." *State v. James Dewayne Bass*, No. M2005-01471-CCA-R3-CD, 2006 WL 1381607, at *3 (Tenn. Crim. App. May 12, 2006), *no perm. app. filed*. However, "[a] defendant's record of steady, gainful employment often militates against a finding of a professional criminal status." *Id*. at *2 (citing *State v. Linda Culver*, No. 01C01-9503-CC-00057, 1995 WL 702793, at *2 (Tenn. Crim. App. Nov. 30, 1995)).

Here, although the Defendant has a consistent record of employment, the trial court found that the Defendant's six thefts between 2009 and 2015 totaled nearly

- 17 -

$500,000, which "is a lot of money for a country lawyer and amounts to a 'major source of livelihood' for at least six years." During his allocution, the Defendant stated that he "took funds [he] shouldn't have" because his "family began to have financial problems." This admission supports the trial court's finding that the Defendant used the stolen funds as a "major source of livelihood" and was therefore a "professional criminal." *See State v. Marques Sanchez Johnson*, No. M2012-00169-CCA-R3-CD, 2012 WL 5188136, at *4 (Tenn. Crim. App. Oct. 18, 2012) (upholding the trial court's finding that the defendant was a "professional criminal" because he committed thefts "in part to provide for himself and his family"), *perm. app. denied* (Tenn. Jan. 22, 2013).

Further, the Defendant argues that the trial court misapplied the "extensive criminal activity" factor. This factor has been interpreted "to apply to offenders who have an extensive history of criminal convictions and activities, not just to a consideration of the offenses before the sentencing court." *State v. Palmer*, 10 S.W.3d 638, 647-49 (Tenn. Crim. App. 1999). Additionally, "an extensive record of criminal activity may include criminal behavior which does not result in a conviction." *State v. Koffman*, 207 S.W.3d 309, 324 (Tenn. Crim. App. 2006) (internal quotation marks omitted).

In this case, the trial court found that "[t]he [D]efendant's lies to his clients, theft of money entrusted to him and repeated criminal activity on an extended period of time constitute[d], in this [c]ourt's opinion, an extensive record of criminal activity." Even if a defendant has no prior convictions, "current offenses may be used in determining criminal history for purposes of consecutive sentencing." *State v. Kenneth Michael McIntosh*, No. E2017-01353-CCA-R3-CD, 2018 WL 2259183, at *6 (Tenn. Crim. App. May 17, 2018) (quoting *State v. Carolyn J. Nobles*, No. M2006-00695-CCA-R3-CD, 2007 WL 677861, at *12 (Tenn. Crim. App. Mar. 7, 2007), *no perm. app. filed*) (internal quotation marks omitted), *no perm. app. filed*. As detailed above, the evidence does not preponderate against the trial court's finding that the Defendant had an extensive record of criminal activity because he committed numerous acts of theft over several years. Therefore, the imposition of consecutive sentences was proper.

### C. Denial of Probation

The Defendant argues that "[t]he trial court's erroneous consecutive sentences ensured [the Defendant] was ineligible for alternative sentencing." The State contends that the trial court did not abuse its discretion in finding alternative sentencing was not appropriate. We agree with the State.

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny

probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *Bise*, 380 S.W. 3d at 708). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A) (2017).

Tennessee Code Annotated section 40-35-303(a) states that "[a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less[.]" Tenn. Code Ann. § 40-35-303(a) (2017). However, a defendant remains eligible for probation if "the actual sentence imposed for each conviction was ten years or less and the offenses for which the defendant was sentenced are not specifically excluded by statute." *State v. Anthony Harville*, No. M2015-02116-CCA-R3-CD, 2016 WL 4216683, at *5 (Tenn. Crim. App. Aug. 9, 2016) (citing Tenn. Code Ann. § 40-35-303(a); *State v. Langston*, 708 S.W.2d 830, 832-33 (Tenn. 1986)), *no perm. app. filed*; *see also State v. Quadarius Deshun Martin*, No. W2015-01095-CCA-R3-CD, 2016 WL 3563661, at *7 (stating the defendant was eligible for probation because each sentence was ten years or less), *no perm. app. filed*. "[T]he burden of establishing suitability for probation rests with the defendant." Tenn. Code Ann. § 40-35-303(b) (2017); *see also Carter*, 254 S.W.3d at 347.

Here, the Defendant was convicted of four Class B felony thefts and is thus not considered a "favorable candidate" for alternative sentencing pursuant to Tennessee Code Annotated § 40-35-102(6). The trial court stated on the record all its considerations in determining that alternative sentencing was not appropriate, including the presentence report, the Defendant's physical and mental condition and social history, the facts and circumstances surrounding the offenses, the nature and circumstances of the criminal conduct, prior criminal history of the Defendant or lack thereof, the previous actions and character of the Defendant, whether or not the Defendant might reasonably be expected to be rehabilitated, whether or not it reasonably appeared the Defendant would abide by the terms of probation, whether or not the interests of society being protected from further future criminal conduct are great, and whether or not measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the Defendant, whether any probation would unduly depreciate the seriousness of the offenses, deterrence, and whether or not the offenses were particularly enormous, gross or heinous. These factors in combination more than adequately support the trial court's denial of alternative sentencing. Further, since four of the Defendant's six properly ordered sentences exceed the ten-year maximum sentence statutorily permitted for

consideration of probation, the trial court did not abuse its discretion in finding that probation was inappropriate.

### D. The Purposes and Principles of Sentencing

In his Reply Brief, the Defendant argues that the collective effect of (1) applying five enhancement factors absent from the presentence report, (2) rejecting ten mitigating factors present in the presentence report, (3) ordering consecutive sentencing, and (4) rejecting alternative sentencing shows that the trial court "wholly departed" from the Sentencing Act of 1989. We disagree.

As stated above, the trial court acted within its discretion in applying the sentencing factors, imposing consecutive sentences, and denying alternative sentencing. The trial court imposed an in-range sentence for a standard offender. The record shows that the trial court stated its reasons for imposing mid-range sentences, followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due considerations to the relevant sentencing principles. The trial court sentenced the Defendant to an effective fourteen-year sentence for his six convictions for theft, a sentence consistent with the purposes and principles of sentencing and within the appropriate range. Based on our review, we conclude that the trial court did not abuse its discretion in ordering mid-range sentences within the applicable range, nor did it "wholly depart" from the purposes and principles of sentencing. Therefore, the judgments of the trial court are affirmed.

### III. Conclusion

In consideration of the foregoing, we affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE